May it please the court, I'm Bradley O'Connell representing Petitioner Robles. I'd like to devote most of my time to the Flores-Ortega issue because I think, frankly, the second and third issues of this relation back-in-the-state issues are much more straightforward. As to the Flores-Ortega issue, in the current posture of the case, the only pre-judgment document that was before the district court, the only pre-judgment document lodged by the state in its answer was the probation report. The probation report, which, of course, was provided to counsel during the interval between the plea and sentencing. Counsel, I noticed the absence of the plea agreement myself. I was unable to locate in the materials provided to us a complete copy of the plea agreement. And I'm gathering from the way the parties have dealt with this case that it did not contain a waiver of the right to appeal. That's certainly how it was dealt with. But am I missing its presence somewhere? No, you're not, Your Honor. In the record before the district court, we have neither a written plea agreement for plea waiver form nor a plea transcript. Our only understanding of the plea is essentially a second-hand one that we get via the probation report. Whose obligation is it to provide those documents? Under this court's precedence, if the record lodged by the parties is not adequate to permit decision of the issues, the district court is required to obtain those. The district court is required to ask, in this case, would be to ask the state to lodge a more complete record. I believe one of those Jones v. Wood cited in the appellant's brief. So as Your Honor's questions reflect, there are really two dilemmas before the court. The first is, what do we know on the current record? If we were to pretend that the current record equals the totality of circumstances, what would that tell us under Flores-Ortega? Well, dealing with just the current record, the probation report tells us that the defendant stated to the probation officer that he believed his attorney had not represented him well, that he may seek to withdraw his plea, and that he was only willing to accept a county jail sentence, which would be in California a sentence of up to one year. However, he ultimately got a sentence of eight years. Now, knowing those things, knowing that he's dissatisfied with the counsel, he's dissatisfied with his plea, he is dissatisfied with the eight-year prison sentence he ultimately got, can we say that this particular defendant sought an end to judicial proceedings and was interested in going no further in the language of Flores-Ortega? And I submit that what we have before us tells us the very opposite. It's easy to deride these sorts of criticisms of one's plea bargain as post-plea buyer's remorse. Maybe it is, maybe it's not, but I submit that when counsel is on notice, as she was here, that the defendant had these grievances about the adequacy of his representation, about the legality of his plea, and about his sentence, that necessarily brings the case within what the Supreme Court said would be the great majority of cases, namely that counsel had a duty to take the elementary step of consulting with the defendant. So I submit that the current record, by virtue of what we know was imparted to counsel by the probation court, establishes a Flores-Ortega violation. But if the court, to the extent that the current record is not adequate, then at the very least he has established a colorable claim of a Flores-Ortega violation, such as to entitle him to an evidentiary hearing, and at the very least the district court should have obtained a more complete record. And frankly, I think this is a situation in which the record can only get better. When we have this probation report, which is in that crucial interval between plea and sentencing, that is the best indication of what the defendant's feelings were going into the sentencing hearing. Now, maybe these additional transcripts will tell us more, but given that we don't currently have any of the pre-judgment transcripts, we don't even have a complete listing of what the original charges were, so we can't really assess whether this was a particularly good bargain or not. Well, it looked from what we had as if there were three charges dismissed and one. That's right, Your Honor. Oh, so there's a quid pro quo that's apparent here. There is some type of bargain. We're not really able to evaluate what the stakes were on the current record. But I would submit that given that there are the two different ways of triggering a duty to consult under Flores or Teika, there is the objective test under which a reasonable defendant would want to appeal because the case poses non-frivolous issues, and there is the more subjective test that counsel knows or should know that this particular defendant would be desirous of appealing. Well, I submit that the probation report conclusively satisfies the second of those, and maybe the missing records would satisfy the first, maybe not. But even if additional records were to suggest this was a pretty good bargain, that still wouldn't change the fact that the record here indicates that this particular defendant was desirous of appealing. And as indicated in the California case law, which I cited in the brief, ineffective assistance of counsel regarding a plea is potentially revealable on a direct appeal in California. And additionally, any defendant who has complaints about his plea in California is going to want to file an appeal because the filing of the appeal starts an entire broader mechanism. For one thing, California has a strict rule, as also reflected in the cited cases, that it will not appoint the trial counsel as appellate counsel. So by filing of an appeal, the defendant will have the benefit of a new appointed attorney who can review the plea and advise him further on whether it makes sense to challenge it. Additionally, with appellate counsel, there is also the possibility, as reflected in several cases cited in the briefs, that to the extent that the direct appeal record isn't conclusive on any ineffective assistance issues, appellate counsel can, in conjunction with the direct appeal, file a habeas corpus petition in the original jurisdiction of the state appellate court and consolidate that with the appeal. And in the reply brief, I cited several examples of that. So I submit this. Counsel, are you suggesting that in any event there should be a remand for a hearing? And the question is as to the scope of the hearing, depending on whether the pre-sentence report is viewed as sufficient? Or what is your position on that? My position, my opening position, I would say, is that on the issue of whether there was a duty to consult, that the probation report is conclusive. And for that reason, and within that framework, I would say the duty to consult is established on the current record and that a remand is necessary simply for an evidentiary hearing on whether or not there was such consultation. In the event the Court is not convinced of whether we have enough of the totality of circumstances currently before us, I would then say as an alternative remedy that the scope of the remand should be broader and should include further development of the record, including getting whatever additional pre-judgment transcripts may be obtainable in order to fully develop the totality of circumstances to place in a full factual context whether the circumstances were enough to require counsel to take the minimal step of telling him he had a right to appeal and how to file one. But in the latter respect, you're really not talking about looking at transcripts. You're really talking about a brand-new evidentiary hearing, are you not? I'm talking first about transcripts to the extent they're obtainable. Yeah. And beyond that, potentially a broader evidentiary hearing. I think the initial question would be, since what we currently have is so few snippets of what a conventional appellate record would be, I think the preliminary question would be to create more of a record of court documents, and then only after that could the district court determine whether those documents were conclusive or whether the evidentiary hearing should encompass the consultation duty issue or whether the consultation duty was adequately established, and the question merely comes down to did or did counsel not advise him. But just to make my own position clear, I think that probation report so clearly demonstrates this particular defendant's interest in appealing. It's hard to imagine anything out there that could undo that and could relieve counsel of the duty to consult. Unless the plea waived the right, which we also don't know. Well, I would disagree with that, Your Honor, because if the issue is the validity of the plea agreement and the adequacy of counsel's representation. But that isn't an issue that you've raised, that the plea was invalid. Well, that there was ineffective assistance. I think his claim is, my attorney did not represent me, to use this phrasing in the probation report, my attorney did not represent me well. I'm considering withdrawing my plea. So that, if he is seeking to challenge the validity of the plea, that would be subsumed. If the whole plea was invalid, that would raise the issue of the legitimacy of any appeal waiver. But again, as one of the earlier questions indicated, we don't have anything on this record that indicates there was any appeal waiver. Because we do not have a copy of the plea. Unless the court had any additional questions on Flores-Ortega, I thought I would just very briefly mention the other two issues. Though, again, I view the Flores-Ortega one as the major thrust of this appeal. Because, frankly, the relation back and stay issue seem pretty straightforward. As to relation back, the policies under relation back go back to two things. It's not a matter of legal labels. It's not a matter of what one names a cause of action. It is whether the claim sought to be amended in arises from the same event, the same transaction, the same set of operative facts. And the policy behind that is that the adverse party has notice of the basic set of circumstances, which are the subject of the action, be it a civil action or a conventional civil action or a habeas clause. Isn't there also a requirement of notice of the nature of the claim? I mean, one set of facts could give rise to 15 or more completely separate theories. Does there have to be any notice of the theories in your view? In my view, there does not have to be notice of theories. And, in fact, I think that one of the more common situations for relation back will be where the events are stated in the original pleading, but there is subsequently developed a different legal theory based on those events. Now, I should add, in this particular case, I believe the adverse party had notice of both of the events and the theories because the original habeas petition attached the previously filed arguments. The equal protection. Equal protection and ineffective assistance. They were attachments because in his original pleading. But a party is perfectly free to abandon earlier claims and often does so. Now, the attachment could serve many purposes other than saying that I'm repeating all of these claims. For example, I exhausted the claims that I am bringing. So why does the attachment necessarily mean that all the attached claims are being brought again? Well, I think regardless of whether they are necessarily being brought again in the original petition, they are sufficiently raised by the original petition that certainly the adverse party has notice of them. Certainly the adverse party cannot claim to be stunned that the defendant is raising the equal protection claim since, after all, the vote. Well, they can if the original pleading is viewed as having affirmatively abandoned the things that are not being brought forward. Do you understand my question? I do not. If there were ten things in the attachment and you say I'm raising one claim now and it is this, then doesn't the other party properly understand that the other nine are out of the picture? I don't think that's what occurred here because we're. . . Do you agree with me theoretically or just in this case? I strongly disagree in this case, and theoretically I think it may depend on the circumstances. Certainly if one were dealing with a more clear attorney-drafted pleading, there might be a situation where one could clearly see that a particular claim formerly raised was being abandoned. But what we have here is a pro pair pleading using the fill-in-the-blank forms for pro se petitioners. In that form, he said I wasn't told I had a right to appeal. In his citation of legal authorities, he cited both the Sixth and the Fourteenth Amendments. His habeas declaration stated in the same sentence, neither my attorney nor the trial judge told me I had a right to appeal. The same sentence. If we're going to go by the test which has been articulated in this circuit's relation back cases and conventional civil cases, those are the operative facts there. You're saying that Rule 15c applies essentially? Yes. Yes, Your Honor. And so you're saying that the civil case precedents apply with equal force? Oh, absolutely. I would say, if anything, to the extent there's any difference, the other aspect we have to bring in is the rule of liberality in construing pro se inmate pleadings. But certainly this case, this court has stated in Anthony v. Canberra, the basic proposition that Rule 15 applies to habeas petitions. So I think it's appropriate that in the first instance the court looked to the Rule 15 precedents and the phrase the court used in the past is the core of operative facts. And in this case I think the core of operative facts are He is saying I was not advised by either counsel or the judge that I had a right to appeal. So your argument essentially is that that was enough to put the State on notice of the position? Yes, Your Honor. I think that independently, my position is that either of these circumstances, either the fact that his habeas affidavit stated in the same breath, neither the attorney Where do you see that in the petition? I'm sorry, what page of the excerpts are you referring to? Let me get this act together. I'm looking at page 6 and it says I was never told I had a right to appeal. But this is after a sentence that said counsel failed to provide me with documentations. I'm sorry, I'm missing the Excuse me, Your Honor. I was referring to the This is at ER 70. His declaration, which was Okay. I thought you were talking about the petition. His declaration was attached to his petition. Okay. And you're looking at that second paragraph then. Yes, Your Honor. That's right. On October 6, 1998, continuing to the second sentence, excuse me, the third sentence of the second paragraph, neither Ms. Carmichael nor the judge advised me that I had a right to appeal. And that, in your view, connects to the equal protection claim. Yes, Your Honor. Because the Sixth Amendment claim relates to the fact that the attorney didn't advise him. The equal protection claim is based on the fact that the judge didn't advise him since there is this rule of court in California that appeal advisements are only judicially given to a post-trial defendant but not a post-plea defendant. So I think there are two independent ways that he's entitled to relation back. The first is under the operative facts test, and the second is that by virtue of the attachment of the argument, of both arguments. All right. I was trying to tell you two minutes ago you had two minutes that you probably wanted to save, but we'll still give you two minutes for rebuttal. Thank you, Your Honor. I will decline to say anything on the state issue then. I will appreciate that two minutes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Nanette Winokur, Deputy Attorney General for Respondent. Like counsel, I will focus on the first issue. First, I'd like to note that as far as the transcript for the plea hearing, I have, as I noted in a footnote in my brief, I have attempted to try to get that transcript. Apparently, there is no record of it. If that helps the Court at all on the issue today. As far as the plea waiver form, that's a separate issue. But as far as the transcript goes, there is no record of that. And I can say that it's our position that even without that information, that on this record, there is no showing of ineffective assistance of counsel. First, with the duty to consult, the sole piece of evidence or the sole argument that Petitioner sets forth is his comment in the probation report to his probation officer that he is thinking about withdrawing his plea. Following the issuance of the probation report, there was a sentencing hearing, which we do have a transcript for. And as the Superior Court noted in its order denying Petitioner's habeas corpus writ, Petitioner, he stood mute. I mean, he didn't say anything to the Court. He didn't raise any issues. He didn't express any dissatisfaction at all about his plea or about his attorney, which directly contradicts the comment. Or at least it could be considered consistent with the comment to the probation officer that he had maybe thought at the time he was going to withdraw the plea, but by the time sentencing came around, he realized that it was a good deal because three counts were dismissed. And as the Superior Court noted, he was facing a substantial sentence had he not pled guilty. I do want to point out that based on this comment in the probation report, that he wanted to withdraw the plea, that in this case if that's what he wanted to do after sentencing, he couldn't have done it in a direct appeal anyway, in California at least. He would have had to follow writ of quorum nobis. There was nothing in a direct appeal for an appellate court to look at because he never filed a motion to withdraw his plea. So based on that fact and based on the fact that the district court noted that all these IAC claims involved claims really that went outside the record, a direct appeal would have been pretty much useless for any of his claims. Well, wait. If he had asked counsel about an appeal and the counsel tells him, well, don't worry about that, we can't do it by appeal, but quorum nobis is available, what's the force of the argument that says that the particular remedy was not available? Certainly he was not himself a lawyer, did not know that distinction, right? Well, Your Honor, I agree with that on its face. However, he promptly filed a petition for writ of habeas corpus in the superior court not long after his conviction. But he thought that was the remedy he ought to pursue, right? And, in fact, in this case it was the proper remedy. But if he had gotten advice of counsel who would have suggested no, quorum nobis is the way to go. There was a time in Illinois, the remote precincts from which I emanate, in which people never got to the merits on these things because the court would and the attorney general would always say, well, you picked quorum nobis, that's wrong. You should have picked quorum bobus. And if they took quorum bobus, they were told, no, you should have taken habeas. And there were people who applied 17 times without ever getting to trial. That's what lawyers are for, isn't it? Well, yes and no. I think when you look at the facts of this case and you see that he proper filed a writ in superior court raising his ineffective assistance of counsel claims, yes, you can say he had no idea he could have or should have filed a writ of quorum nobis. But his ineffective assistance of counsel claims that were included in his habeas writ in superior court included the bulk of his claims that he was dissatisfied with counsel. So my point being that even if we assume that counsel did not directly advise him of the right to appeal, even on the facts of this case, with pretty much just a comment to a probation report, a probation officer of his dissatisfaction, I mean, as the superior court noted, this is more a case of buyer's remorse. I mean, he never spoke up at sentencing hearing. Now, in our view, that goes to support the conclusion that this was a good deal, but he had three counts dismissed, and he was facing a substantial sentence if he didn't plead. Well, now you're really talking about the merits of it. But you started out saying, I gather, that there was no appeal for ineffective assistance of counsel. Are you saying that there was no appeal he could have taken had he been advised of an appeal? I believe on the claims he's making now, that is correct, Your Honor. I believe the claims he's making now are, I would have withdrawn my plea, so that would be, you know, an appeal of a motion to withdraw a plea, which you can't have without the motion in the first instance, and then these IAC claims. I'm not saying you can't bring an IAC claim on direct appeal. However, on the particular facts of this case, as the district court noted, he had to go outside the record, because he had to get counsel in to testify, let's say, to what counsel did or didn't notify him. Your opposing counsel said that in California, when you take a direct appeal, you can also simultaneously join it with a separate writ that gives you the evidentiary hearing, and the court takes it all up under the appeal. Is that right? That's true, Your Honor. However, I believe the operative word you just mentioned is can, but there is no requirement. And in this case, as I said, he could just as easily have brought a writ, and because of the circumstances of this case, he would have had to. There's no way you can go outside the record in a direct appeal in California. So if you don't ---- So if I understand your position, it is that with respect to a direct appeal alone, looking at that slice only, there were no non-frivolous issues for appeal, as far as everything in the record demonstrates. That's true, Your Honor. I believe, based on what we do have, him pleading guilty, him receiving a sentence that was substantially less than he would have received had he gone to trial and getting three counts dismissed, and the fact that he didn't say a word at sentencing, which shows that he was pleased with the plea agreement. Well, if he had said he was displeased at sentencing, then what? Well, I think that that obviously makes opposing counsel's argument stronger, because he's saying it in front of the court, and on the record, it's not just as obvious a case of buyer's remorse, because ---- You're evaluating the merits of it, really. You're saying that he really was satisfied with it. That's why he doesn't have a right to the appeal? No, Your Honor, I don't think that's what I'm saying. I think what I'm trying to look at, when you look at the Flores-Ortega analysis and you look at whether there was a duty to consult, they look at various circumstances. For instance, they have said they'll look at whether a defendant has pled guilty, which would mean that he's pleased with his sentence and or was seeking an end to judicial proceedings. You look at things like whether there were any counts dismissed. You look at all the circumstances surrounding the plea, and I think that there is enough on this record. I'm not saying I'm going to the merits of the appeal. I'm saying that based on these different factors, I think it shows that this particular defendant did not notify or apprise counsel that he was interested in appealing, and I think that's what we need to look at. If he had, suppose the record showed that he told counsel that he was interested in appealing. Well, then we have to go to the second prong, the Strickland prong. Was he prejudiced? And in the context of Flores-Ortega, that is, well, would he have appealed? And again, I would say relying on the same evidence, based on this record I don't think it appears that he would have appealed. And then I guess that goes to the factors we were talking about as far as the merits. I think that when you're looking at whether he would have appealed, you do need to look at the fact that his claim was really best brought on habeas or writ or some kind of writ and that it wasn't really cognizable in a direct appeal. But doesn't Flores say that when you look at the prejudice prong of Strickland, the test is whether there is a reasonable probability that but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Flores uses the frivolous issue as a disjunctive, not conjunctive requirement. It says that it's enough to show that there's reason to think that the particular defendant reasonably demonstrated to counsel that he was interested in appealing. So Flores does not really, as I believe, and I'm looking at the language, talk about that as an added requirement, but rather a requirement that's sufficient unto itself, does it not? I'm not sure that I understand, Your Honor, what you mean is a requirement sufficient unto itself. I do think that as far as says that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either, then one is the one about frivolous and the second one is that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. So once you pass that hurdle, you then go to Strickland and its requirement of prejudice. But what Flores goes on to say on prejudice is that to show that the defendant must demonstrate there's a reasonable probability that but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. That means that the defendant can make an unreasonable decision about taking appeal, doesn't it? That's true, Your Honor, except that when you're talking about the second prong under Flores, you can't, you still, Flores clearly says that you need to look at all the circumstances. We're not just looking at, for instance, the defendant saying I would have appealed. We still have to look and even talk about the fact that the two prongs overlap because you are looking at the same factors for both prongs. You have to look at the totality of the circumstances. So basically, as far as showing prejudice, it's our position that in this case, when you look at all these circumstances under the prejudice prong, that I don't believe that there's evidence to show that he would have timely appealed. And I'm not just relying on the fact that his specific claims could not have been brought on direct appeal. I'm relying about the fact that he did plead guilty, that he did have three counts dismissed, that he did not raise any objections at the sentencing hearing, which was after he had already told his probation officer that he was thinking about withdrawing his plea. One of the problems with all of this, it seems to me, is that whenever courts talk about what a rational person would have done, that's not equated with what somebody could not mistakenly have done. In other words, a rational person is also entitled to make some mistakes. So if he made a bum judgment about whether he ought to take an appeal, but he really wanted to take one, it sounds as though from Flores as though it's counsel's duty to have apprised him of that opportunity. Well, I don't disagree with you, but again, I'm saying that based on the facts of this case, I don't think that there's evidence that he wanted to. Well, I understand that. Yeah. And I'm just going to switch for a moment quickly to the relation-backed doctrine issue. I do want to point out that the public policy, I know counsel keeps kind of emphasizing these operative facts, but that the public policy behind the relation-backed doctrine is to allow the non-moving party not only notice, but the ability to defend against the charges. And it's our position that- Do you have great difficulty defending against the equal protection argument? Well, Your Honor- More than you ever would. It doesn't seem to me to be a very difficult argument to defend against. It's a straight legal issue that you're just as capable of defending against now 10 years from now or 10 years ago. I beg to differ, Your Honor. I think that the underlying legal issues and the elements that you need to defend against are quite different in the equal protection argument as they are in his due process argument. As noted in our brief, I mean, we have to look at totally different things. And the fact that he- Tell me, what is it that's different, that's the passage of time? In fact, he says the argument, as I understand it, maybe I don't, is that because you're required to advise people who go to trial of their right to appeal, there's an equal protection violation if you don't advise the other class of people, those who plead guilty. Now, how in the world is the argument any different today than it was then? No, it's not, Your Honor. However, I guess what I'm saying is there's no carte blanche to just introduce without notice claims. And when we're talking about prejudice, we're not necessarily saying we couldn't raise, we couldn't respond to the argument. The point being that in this case, when you look at the fact that 20 pages after his petition for habeas corpus, he pasted his appellate arguments, as Justice Graber was noticing, I mean, this is an indication that he was affirmatively making this affirmative decision not to include the argument. Then the nonmoving party sees that and assumes there's no argument, and then down the road, I mean, are we going to allow defendants to just move back and forth between court and changing and cutting and pasting arguments so that there's no end to the judicial proceedings because they're adding new old arguments? Well, but they're doing it for the state's not deprived of any opportunity, is it? It wasn't required to address it the first time around because it wasn't posed in that sense. But if it's posed a second time, isn't Judge Reinhart's question, how are you disadvantaged by the need to respond to it as a sheer legal argument, not a factual one, the second time around? Well, I think the best way to answer that is just to say not necessarily to show the prejudice, but to say as a public policy matter, again, do we want to keep allowing, I mean, here defendant is making an affirmative, supposedly an affirmative decision to exclude the argument, and then, I mean, we want an end to judicial proceedings. Public policy 15C says that if it comes from the same core of operative facts, then it relates back so long as there is something to give or indicate reasonable notice. I don't know about Ninth Circuit because I haven't pursued it to that extent, but Seventh Circuit is fond of reminding us that even erroneous legal theories in a complaint aren't part of the claim. The claim is the core of operative facts. It makes a distinction between cause of action, which is a state kind of concept, and claim, and that citing the wrong legal theory, citing no legal theory, all of that is not necessary to the relation back notion. Well, Your Honor, there are at least, I think, at least four or five circuits that have clearly, in my opinion, would not find that this related back. Now, the Ninth Circuit hasn't necessarily spoken on this particular issue, but there are at least four other federal circuits, which I think even counsel, opposing counsel recognizes, has never found that it would be held that broadly. So I think that that is going against controlling authority or perhaps not controlling authority in this circuit, but the authority to date on the issue. And as far as public policy, I mean, I do note that a lot of cases talk about the core of operative facts, but I do believe in this case you can't just take one fact, which is my attorney didn't advise me of the right to appeal, and that that covers any legal claim that you can make. Are there any other questions? I'll submit them in the briefs. Thank you. May it please the Court, let me take the issues in the reverse order. Counsel mentioned out-of-circuit cases on relation back. I would particularly commend the Court's attention to the Eleventh Circuit decision, Woodward v. Williams, which is cited in the briefs. I think it's a good illustration of the fact that operative facts is something entirely different from identity between claims. Woodward v. Williams, the original petition alleged error in the admission of a statement because that statement had later been recanted. The amended petition sought to add a theory challenging the exclusion of defense evidence concerning the fact of the recantation. So the original theory was one of erroneous admission of evidence. The amended theory was one of erroneous exclusion of evidence, but they still related to the same core of operative facts, which was this recanted statement. I think what we have here, there's a much closer connection between the original and the amended claim than was found adequate in Woodward. The cases that have found no relation back have been when the claims related to entirely different parts of the case. For example, if the original petition alleged ineffective assistance in the handling of a search and seizure motion, and then the subsequent amendment attempted to allege ineffective assistance during the sentencing hearing, they were claims having to do with different parts of the case. So when we take both the way the Ninth Circuit has articulated relation back standards and its use of the concept of operative facts, and we look at the lessons from how other circuits have distinguished between what is an entirely new claim and what is a related claim, I think this is actually a pretty straightforward issue. If I could just say one point on Flores-Ortega, I don't think that the Court can read anything at all into the fact that Mr. Robles didn't say anything during what was seen as almost a perfunctory sentencing hearing. He wasn't asked to say anything. Counsel appeared. She said it was submitted. When the defendant – there was no allocution. There was no invitation to the defendant to speak. Defendants are told all the time, don't speak, do not jump up in course. So in effect, Mr. Robles is being penalized for not interrupting the proceedings, jumping up and saying, I want to say something. I have seen scores, maybe hundreds, of transcripts from sentencing hearings after pleas in which the defendant later filed a notice of appeal. I would say out of those, it is very, very rare that the defendant says anything during the sentencing hearing about wanting to appeal. But defendants who are dissatisfied with their pleas routinely do file appeals anyway, and the reason they file appeals is, number one, the type of issues they're raising may be cognizable on direct appeal. One can't know until the full record is prepared and an appellate attorney looks at it. But they also file the appeal because in California, that is what starts the whole mechanism. That's the way they get the assistance of new counsel. New counsel can determine whether it can be raised in appeal alone or whether it can be assisted through a habeas filed in the court of appeal. That is the route any defendant is going to want to take rather than be left to his pro se writ remedies because as this court is aware from the many cases that come before it, pro se writs are traps for the unwary. Defendants rarely get them right. They rarely fill out the forms correctly. Any defendant is going to prefer to have the assistance of counsel. Thank you, counsel. Thank you very much. Thank you, Your Honor. The case just argued will be submitted.
judges: Reinhardt, Graber, Shadur